UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DESIREE JOHNSON, | : | |
| | : | |
| PLAINTIFF, | : | NO. |
| | : | |
| VS. | : | |
| | : | |
| THE STATE OF CONNECTICUT, | : | |
| THE STATE OF CONNECTICUT, | : | |
| JUDICIAL BRANCH, | : | |
| RUSSELL DOWNER AND | : | |
| THOMAS TERCJAK, | : | |
| | : | |
| DEFENDANTS. | : | JULY 3, 2019 |

## C O M P L A I N T

## COUNT ONE

1.  This is an action for money damages to redress the deprivation by the

defendants of rights secured to the plaintiff by the laws of the United States and the

State of Connecticut.  The defendants subjected the plaintiff to, inter alia, racial

discrimination, sexual harassment, hostile work environment and retaliation, in violation

of the rights secured to the plaintiff by the provisions of Title VII of the Civil Rights Act of

1964, as amended by the Civil Rights Act of 1991, 42 U.S.C.A.§ 2000e.  The

defendants further subjected the plaintiff to violations of her rights pursuant to 42

U.S.C.A.§ 1981, and to equal protection and due process, secured to the plaintiff by the

provisions of the United States Constitution, before the Court pursuant to 42 U.S.C.A.§ 1983.

The defendants further subjected the plaintiff to racial discrimination, sexual harassment, hostile work environment and retaliation, in violation of the rights secured to the plaintiff by the provisions of the Connecticut Fair Employment Practices Act, C.G.S.A. § 46a-60, et seq.; to negligent supervision and to the intentional infliction of emotional distress, in contravention of the laws of the State of Connecticut, invoked pursuant to the Court's supplemental jurisdiction.

2.  Jurisdiction of this Court is invoked under the provisions of Title 28 United States Code §§1331, 1343(3) and 1367(a), and Title 42 United States Code §§1981A, 1983, 1988 and 2000e-5(f).

3.  The defendants recklessly, intentionally and maliciously discriminated against the plaintiff and treated her differently from similarly situated employees not of the plaintiff's race, color, ethnicity, or who had not complained about unlawful conduct.  The defendants' treatment of the plaintiff was due to or motivated by plaintiff's race, color, ethnicity, or in retaliation for her complaints about unlawful conduct.

4.  At all times mentioned herein, the plaintiff, Desiree Johnson, was and is an adult resident of New London, Connecticut.  The plaintiff is an African-American black female.

5.  At all times referenced herein, the defendant Russell Downer was the Chief Judicial Marshal of the Windham Judicial District, acting in his official capacity.  The defendant Downer is sued both in his individual capacity and in his official capacity.

6.  At all times referenced herein, the defendant Thomas Tercjak was a Lieutenant and Supervising Judicial Marshal of the Windham Judicial District, acting in his official capacity.  The defendant Tercjak is sued both in his individual capacity and in his official capacity.

7.  The State of Connecticut and the State of Connecticut, Judicial Branch are defendants.

8.  At all times relevant to the instant complaint, the defendants State of Connecticut and the State of Connecticut, Judicial Branch were and are employers with more than 100 employees.

8.  On or about December, 2012, the plaintiff became a Judicial Marshal for the Connecticut Judicial Marshal Service, a department of the defendants State of Connecticut and Judicial Branch.

10.  The plaintiff's first work assignment was the Danielson Courthouse in the Windham Judicial District, commencing on April 12, 2013.  Upon information and belief, the plaintiff was the first African American female Judicial Marshal ever in the Windham Judicial District.

11.   For the entirety of her assignment to the Danielson Courthouse and thereafter, the plaintiff was subjected to racial discrimination, harassment and sexual harassment by supervisory and other members of the Connecticut Judicial Marshal Services.

12.   Prior to her initial assignment, the plaintiff was warned to "watch her back", because she was the first African American female marshal in the District.  The plaintiff was warned by Lt. Karen Dragon, an instructor at the Judicial Marshal Training Academy.  Lt. Dragon was the first Hispanic female marshal, along with her mother, in the Windham Judicial District.  Lt. Dragon suffered similar racial and gender harassment in the Danielson Courthouse by many of the same personnel of the defendants complained about in the instant matter, and had recently prevailed in a Federal Jury Trial against the defendants State of Connecticut and Judicial Branch due to that conduct.

13.   From the outset of her employment, the plaintiff was treated differently and more harshly than her white counterparts, and sexually harassed by both supervisors and colleagues.

14.   The supervisory officers of the defendants State of Connecticut and Judicial Branch who have sexually harassed and discriminated against the plaintiff include, but are not limited to defendant Chief Judicial Marshal Russell Downer; defendant

4

Supervising Judicial Marshal Thomas Tercjak and Supervising Judicial Marshal Lt. Phillip Gaudette.  All are white males.

15.   In her first week of training, plaintiff's Supervisor, Lt. Phillip Gaudette, said he thought the plaintiff "looked like she has an attitude".  The plaintiff was informed of this by her Field Training Officer, Judicial Marshal Griffin.  The "angry black girl" or black female with an "attitude" is a negative racial  stereotype, and the plaintiff perceived it as such.

16.   Supervising Judicial Marshal Gaudette is a Caucasian male, who, at all times relevant to the instant case, held the supervisory rank of Lieutenant in the Judicial Marshal Services.  Gaudette is an agent, officer or employee of the defendants State of Connecticut and Judicial Branch.  The conduct of Gaudette was undertaken pursuant to his employment relationship with the defendant.

17.   Gaudette has a history of racism toward minorities, in particular, minority females.  In 2006, while assigned to the Danielson Courthouse, Gaudette, then a Lead Judicial Marshal, yelled at an inmate of Hispanic origin in front of a female Hispanic Judicial Marshal.  While he was yelling at the inmate, Marshal Gaudette called the inmate a "Spic."

18.   After hearing this, the female Hispanic Marshal asked Marshal Gaudette if she could speak with him away from the inmates.  The Marshal then informed Gaudette that she was offended by his statement and his treatment of the inmate.  Gaudette

stated that he didn't know why his comment would have offended the Marshal, as it was not directed at her.  The Marshal had to explain to Gaudette that his comment was offensive and inappropriate, and that he shouldn't be speaking in that manner to anyone.

19.  Since 2006, Gaudette has  been promoted through the ranks to his current rank of Supervisor, which occurred in 2009.

20.  Judicial Marshal Lauren Barrett, a Caucasian female, started employment at the Danielson Courthouse in the Windham Judicial District at the same time the plaintiff began her employment.

21.  On March 6, 2014, Lt. Gaudette stated that an order came down from Hartford that all marshals need to be assigned to a specific floor when court is adjourned.  The plaintiff was assigned to the third floor and Barrett was assigned to the second floor.  Gaudette came to the third floor to check to see if the plaintiff was there. Thereafter, the plaintiff received a radio call from Barrett, and learned that she all of the other marshals were simply hanging around and not assigned to any particular floor, while the plaintiff alone was banished to the third floor.

22.  On November 6, 2014, the plaintiff was in the control room with defendant Lt. Thomas Terjak and another white marshal, Griffin, when they subjected her to a conversation about the sexuality of a relative of another marshal, and of the plaintiff's six year old son.

23.  The Defendant Supervisor Thomas Tercjak is a Caucasian male, who, at all times relevant to the instant case, held a supervisory rank, including the rank of Lieutenant, in the Judicial Marshal Services.  Tercjak is an agent, officer or employee of the defendants State of Connecticut and Judicial Branch.  The conduct of Tercjak was undertaken pursuant to his employment relationship with the defendant.

24.  The conversation between defendant Tercjak and Griffin began about a marshal's grandson possibly being gay.  The defendant Tercjak and Griffin then turned their attention to the plaintiff's six year old son.  They told the plaintiff that she had better make sure that her young son "doesn't turn gay and like it."

25.  The inappropriate conversation was so outrageous and upsetting that the plaintiff immediately fled the room.  The plaintiff was so visibly upset that several marshals came up to her to ask if she was okay.  The plaintiff expressed her upset with the defendant Tercjak and Griffin, stating that she was uncomfortable talking about what had just occurred.

26.  On or about June 6, 2014, the plaintiff was stationed at the metal detector with Judicial Marshal MacPherson, a white male.  Defendant Tercjak was having a conversation with MacPherson, who is a car enthusiast and loves cars.  Defendant Tercjak began talking about the "bodies" of black "cars" in the plaintiff's presence. Defendant Tercjak made it known to the plaintiff that he was referring to human bodies, and stated that "black bodies show a lot of imperfections."

27.  On or about July 15, 2014, the plaintiff was working the metal detector with Judicial Marshal Hall, a white male.  Several young black males with baggy pants came in the front doors and Marshal Hall stated, "when the popo comes how are you people supposed to run from the police?"

28.  In addition to the racist comments and behavior, the plaintiff has been routinely and persistently sexually harassed, by both her supervisors and her peers.

29.  The conduct of her supervisor, the defendant Tercjak, has been particularly outrageous, egregious and persistent. Tercjak harassed the plaintiff on a near daily basis, making rude sexual comments to and about her, making comments about her body, texting and otherwise imposing unwanted contact upon her both within and outside of the workplace and working hours, and engaging in other highly inappropriate and intimidating sexual behavior.

30.  For example, while in the lockup area of the Danielson Courthouse, the defendant Tercjak referred to the plaintiff as his "sexual chocolate goddess", and stated that he "would like to eat strawberries dipped in chocolate off of [her] stomach".

31.  On several occasions at the workplace, defendant Tercjak asked the plaintiff if she was "tired" from being in his dreams the prior night.  Tercjak's implication was that the plaintiff was having sex with him in his dreams.

32.  On many occasions at the workplace, Tercjak stated that the plaintiff could "stay the night" at his home, and that he had "plenty of hot water" for the two of them to shower together.

33.  At the workplace, defendant Tercjak referred to the plaintiff as  "Purty Tease Johnson."

34.  On several different dates defendant Tercjak contacted the plaintiff by text messages, asking what she was wearing and other inappropriate comments and questions.  For example, on or about August 6, 2014, Tercjak texted the plaintiff at 8:19 p.m. and asked what the plaintiff was wearing.  To dissuade him, the plaintiff gave him a non response of "here you go" (as in "you are at it again") and he said "PTJ"(Purty Tease Johnson) as if the plaintiff were teasing him.  The plaintiff said goodnight to get him to leave her alone, and Tercjak responded, "'nite Prudence."

35.  On numerous occasions, the defendant Tercjak sent the plaintiff text messages demanding that she send him pictures of herself, and other harassing and humiliating demands.  For example, Tercjak sent the following texts:

1.  On January 8, 2014:

     Tercjak: The plaintiff want that picture!!!@!!!!!!!!!

     Tercjak: Not for me.  I ALWAYS get what I want.

     Tercjak: I'm an impatient son of a bitch.

2.  January 23, 2014:

Tercjak: Disappointed!!! :(

Tercjak: I'm gonna keep asking until u give in.

3.  August 15, 2014:

Tercjak: (Photo of a model in a tight dress) I have narrowed it down to 2. This . . . (second photo of a model in a tight dress). And this.

4.  April 26, 2016:

Tercjak: What are you wearing?

Tercjak: Mel [another female Marshal] would do it if I asked.

Tercjak: I miss you on the weekends tho.

Tercjak: Night DJ

Tercjak: I'll miss you.

36.  On March 16, 2016, The plaintiff was stationed at the metal detector with Judicial Marshal Pearce, a white male. The defendant Tercjak was passing out the new employee photo identification cards to the plaintiff and her colleagues.  When he came to the plaintiff, defendant Tercjak stated to her that her "tits look huge", and all he can see is "tits and a small waist" in the plaintiff's Employee Identification picture.

37.  On March 18, 2016, defendant Tercjak stated that the plaintiff "could sit on his lap because there are no more seats in the Control Room."

38.  On the same date, Marshal Griffin asked for a trash can because he was chewing tobacco and wanted to spit it out.  The plaintiff expressed her displeasure at

this, and the defendant Tercjak leeringly asked the plaintiff, "Do you spit?"  This was intended to be a crass sexual reference to fellatio; whether she "spits or swallows".  The plaintiff was humiliated, deeply embarrassed and offended.

39.   Many marshals innocuously jokingly say, "All Rise!" whenever someone enters the room, as judicial marshals say when a judge enters the Courtroom.  On April 4, 2016, Marshal MacPherson saluted the defendant Tercjak and said "All Rise!" as Tercjak entered the room.  Tercjak's response was, "I do every time DJ (Desiree Johnson) is in the room!"

40.   On May 3, 2016, defendant Tercjak asked the plaintiff a question, "Blue?"  The plaintiff was confused, and Tercjak said that he was guessing the color of the panties that the plaintiff was wearing.

41.   On an occasion where the plaintiff was to be trained in the proper technique for conducting a transgender pat down, the plaintiff had to go into the Office of the Chief Judicial Marshal, defendant Russell Downer.  Present in the Chief's office were the defendant Downer, the defendant Tercjak and Lt. Gaudette.  In the presence of the defendant Downer and the Lieutenant Gaudette, defendant Tercjak asked the plaintiff how her training went, and asked her if he needs to demonstrate the pat down on the plaintiff's breasts, saying that he would only use the back of his hands.

42.   At the end of the day when court is finished, plaintiff and her coworkers often listen to music at the workplace.  Defendant Tercjak stated that the marshals could

11

listen to anything but rap music because it is "ghetto music" and he stated that he does not ever want to hear that.

43.   Defendant Chief Judicial Marshal Russell Downer was aware of defendant Tercjak and others' conduct toward the plaintiff, did nothing to stop it, and, in fact, joined in the harassment.

44.   Defendant Downer was aware that other Judicial Marshals referred to the plaintiff as "Tercjak's girl" due to his sexually inappropriate behavior toward her.

45.   On or about June 6, 2017, Defendant Downer texted the plaintiff, stating that he would be stopping by the workplace of her second job at Victoria's Secret.  Downer texted, "Do not tell Tercjak where you are working :-)" and "You will give him a heart attack".

46.   On or about January 5, 2015, the plaintiff was working the metal detector with Judicial Marshal Lewis, a white male.  Defendant Chief Judicial Marshal Downer was at the metal detector and told the plaintiff and other marshals what he claimed to be a "funny" story.  Downer stated that he and his wife had attended a baseball game where they saw two "big black guys."  It just so happened that a Corrections van, used for transporting prisoners, drove by, and he told the two black men, "You missed your ride."

47.   The plaintiff was deeply offended and humiliated by the racist conduct of the defendant Downer, her Chief and highest supervisory Judicial Marshal of the entire

Judicial District of Windham.  It profoundly upset the plaintiff that her Chief found his racism and racist conduct to be "funny".

48.  Being the only African American marshal and employee, all of the plaintiff's coworkers present looked at her when the defendant Chief Downer told the story, which only made the plaintiff even more uncomfortable.

49.  On January 20, 2015, the plaintiff was traveling to work.  Coincidentally, the plaintiff ended up traveling behind defendant State vehicles engaged in the special transportation of a prisoner.

50.  Upon arriving at work in the Danielson Court, the defendant Downer informed the plaintiff that as a result of her proximity to the prisoner transport, her license plate had been run, and a call made to him to confirm that the plaintiff was a Judicial Marshal.  Defendant Downer stated that he was asked if the plaintiff was a security threat.  Downer laughed and told the plaintiff his thoughts about why the plaintiff's license plates were run.  Defendant Downer said, "they must have thought you were a drug dealer from New London in your hood car and tinted windows."  The plaintiff owns a 2011 Mercedes and does not have tinted windows on her car, and she told him so.  Downer then said, "they must have been racially profiling" the plaintiff.

51.  On May 21, 2015, the plaintiff's supervisor Gaudette gave the plaintiff a written warning for calling out from work too often.  The plaintiff told Gaudette that this was impossible, as she rarely called out.

52.  On May 26, 2015, Gaudette informed the plaintiff that he had been instructed by "Hartford", the defendants State of Connecticut and Judicial Branch, to take back the written warning.

53.  The written warning targeted the plaintiff for punishment and in retaliation for her complaints, and included attempting to punish the plaintiff for snow days and sick days, when other, non African American marshals, and those who had not complained were not treated in this manner.

54.  On August 24, 2015, the plaintiff was again working the metal detector with Judicial Marshal Hall.  A bail bondsmen was in the lobby and had a dark tan, having just returned from a vacation  in Mexico.  Marshal Hall stated to him that "if you get any darker you're going to have to apply for section 8."

55.  On August 24, 2015, the plaintiff filed a complaint about these and other incidents with her supervisor, the defendant Tercjak, which was forwarded to the defendants State and Judicial Branch in Hartford.  After investigation, the defendants received a letter stating it was substantiated.  However, nothing happened to the supervisors and personnel  who were harassing and discriminating against , and the misconduct continued.

56.  On October 23, 2015, at the workplace while marshals were talking about New London, plaintiff's supervisor stated after that she "lived in the ghetto".

57.  During work hours and in the presence of others, the defendant Tercjak stated that he wanted to make the plaintiff "Polish by injection."

58.  In front of other employees, defendant Tercjak routinely demanded that the plaintiff provide him with "bikini photos" of herself.

59.  This conduct occurred routinely until June 23, 2016, when the plaintiff finally received her transfer to New London.

60.  Even with my transfer, the harassment did not stop.  For example, on or about July 15, 2017, the plaintiff posted a picture on Instagram and under her picture the defendant Tercjak commented, "smoking."

61.  On November 28, 2017, the defendants State of Connecticut and the State of Connecticut, Judicial Branch issued their findings on the investigation of the plaintiff's complaints.  Therein, the defendant acknowledged that other marshals overheard Tercjak stating that he would make the plaintiff "Polish by injection", and on numerous occasions requested bikini photographs from her.

62.  The defendants further acknowledged the "good old boy" culture of discrimination, cover up and retaliation that exists in the Windham Judicial District.

63.  Defendants State of Connecticut and Judicial Branch expressly found that the "good old boy " culture in the Windham Judicial District, and the "lack of sound leadership" by defendant Downer in violation of Judicial Branch policy would have a

"chilling effect" on the plaintiff's willingness to complain about the discriminatory and harassing conduct to which she was subjected.

64.  Defendants State of Connecticut and Judicial Branch expressly found that defendant Tercjak routinely and frequently sexually harassed the plaintiff.

65. Defendants State of Connecticut and Judicial Branch expressly found that defendant Downer violated his obligations in his role as a supervisor.

66.  Despite overwhelming evidence in the form of admissions of and corroboration by other Judicial Marshal personnel and its own substantiation of defendant Tercjak and defendant Downer's misconduct, the defendants State of Connecticut and Judicial Branch failed to find the defendants responsible for the totality of their misconduct, and took no steps, or insufficient steps, to prevent or punish such misconduct by its supervisors and personnel.

67.  During and after October, 2017 and ongoing to the present, the defendant Tercjak and others from the District have been forwarding texts and photographs to other Judicial Marshals, including those in Hartford, attempting to falsely portray the plaintiff, in retaliation for her complaints and as further discrimination and harassment.

68.  In direct retaliation for her complaints and as further discrimination against her, in November, 2017, the plaintiff was retaliatorily disciplined by her supervisors, including Gaudette, for a picture in which the plaintiff appeared but did not post on

Facebook.  This was in retaliation for her complaints, and further discrimination against the plaintiff.

69.  The harassment continues to the present.  For example, in February, 2018 photographs were mailed to the plaintiff's new assignment in New London with captions written on them.  This was done on at least two separate occasions, and the photographs were sent to the Judicial Marshal's office, the Clerk of the Superior Court, and to Human Resources of the defendant.  This was done to retaliate against the plaintiff and to further discriminate against her.   On information and belief, this was done by defendants Tercjak and Downer.

70.  The plaintiff complained about the retaliatory discipline, and on March 20, 2018, the defendant found her complaints unsubstantiated, and refused to impose discipline upon anyone, or take any action whatsoever to prevent the discrimination, harassment and retaliation to which the plaintiff have been subjected.

71.  The plaintiff has been subject to rumors in New London and Hartford, ongoing to the present, which have been spread by the defendant supervisors and Judicial Marshals from the Windham District.  This is being done to retaliate against her, and to further harass and discriminate against her.

72.  As detailed herein and continuing to the present, the defendants subjected the plaintiff to an ongoing pattern of race discrimination, sexual harassment, disparate

treatment, hostile work environment and retaliation.  The conduct was continuous, persistent and ongoing.

73.  The plaintiff was treated differently and more harshly than similarly situated employees of the defendants due to her race, ethnicity, gender or in retaliation for her complaints about the defendants' conduct.

74.  The plaintiff has exhausted her administrative remedies in this matter, and has sought and received a Notice of Right To Sue letter from the United States Equal Employment Opportunity Commission, and a Release of Jurisdiction from the Connecticut Commission on Human Rights and Opportunities.

75.  The plaintiff was treated differently and more harshly than similarly situated employees of the defendant City due to the plaintiff's  race, color, ethnicity, or in retaliation for the plaintiff's complaints about the defendants' conduct.

76.  The conduct of the defendants State of Connecticut and the State of Connecticut, Judicial Branch constitute race discrimination, sexual harassment, disparate treatment, hostile work environment and retaliation, in violation of the rights secured to the plaintiff by the provisions of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C.A.§ 2000e.

77.  As a direct and proximate result of the acts of the defendants, the plaintiff has suffered, continues to and will into the future suffer severe financial harm and loss, loss of employment rights, duties, obligations or benefits, severe emotional distress,

loss of personal and professional reputation, humiliation, embarrassment, loss of privacy, upset, anxiety, inconvenience, physical harm, loss of property, and loss of employment opportunities.

**COUNT TWO**

1 - 75.  Paragraphs 1 through 75 of Count One are hereby made Paragraphs 1 through 75, respectively, of Count Two.

76.  For the purposes of Count Two the defendants Downer and Trecjak are sued in their individual capacity only.

77.  During all times mentioned in this Complaint, the defendants Downer and Tercjak were acting under color of law, that is, under color of the Constitution, statutes, laws, charter, ordinances, rules, regulations, customs and usages of the United States and the State of Connecticut.

78.  The defendants Downer and Tercjak acted intentionally or recklessly.

79.  The conduct of the defendants Downer and Tercjak violates 42 U.S.C.A.§ 1981 and the Due Process and Equal Protection clauses of the United States Constitution.

80.  As a direct and proximate result of the acts of the defendants, the plaintiff has suffered, continues to and will into the future suffer severe financial harm and loss, loss of employment rights, duties, obligations or benefits, severe emotional distress, loss of personal and professional reputation, humiliation, embarrassment, loss of

privacy, upset, anxiety, inconvenience, physical harm, loss of property, and loss of employment opportunities.

## COUNT THREE

1 - 75.  Paragraphs 1 through 75 of Count One are hereby made Paragraphs 1 through 75 respectively, of Count Three.

76. The conduct of the defendants State of Connecticut and the State of Connecticut, Judicial Branch constitutes discrimination, sexual harassment, hostile work environment and retaliation, in violation of the rights secured to the plaintiff by the provisions of the Connecticut Fair Employment Practices Act, C.G.S.A. § 46a-60, et seq.

77.  As a direct and proximate result of the acts of the defendants, the plaintiff has suffered, continues to and will into the future suffer severe financial harm and loss, loss of employment rights, duties, obligations or benefits, severe emotional distress, loss of personal and professional reputation, humiliation, embarrassment, loss of privacy, upset, anxiety, inconvenience, physical harm, loss of property, and loss of employment opportunities.

## COUNT FOUR

1 - 75.  Paragraphs 1 through 75 of Count One are hereby made Paragraphs 1 through 75 respectively, of Count Four.

76. The conduct of the defendants State of Connecticut and the State of Connecticut, Judicial Branch constitutes negligent supervision pursuant to the laws of the State of Connecticut.

77.  As a direct and proximate result of the acts of the defendants, the plaintiff has suffered, continues to and will into the future suffer severe financial harm and loss, loss of employment rights, duties, obligations or benefits, severe emotional distress, loss of personal and professional reputation, humiliation, embarrassment, loss of privacy, upset, anxiety, inconvenience, physical harm, loss of property, and loss of employment opportunities.

## COUNT FIVE

1 - 75.  Paragraphs 1 through 75 of Count One are hereby made Paragraphs 1 through 75 respectively, of Count Five.

76.  The actions of the defendants Downer and Tercjak as detailed in the foregoing paragraphs were extreme and outrageous.

77.  The actions of the defendants were intentional.

78.  The actions of the defendants were likely to cause emotional distress, and that emotional distress was severe.

79.  The actions of the defendants constitute the intentional infliction of emotional distress.

80.  As a direct and proximate result of the acts of the defendants Downer and Tercjak, the plaintiff has suffered, continues to and will into the future suffer severe financial harm and loss, loss of employment rights, duties, obligations or benefits, severe emotional distress, loss of personal and professional reputation, humiliation, embarrassment, loss of privacy, upset, anxiety, inconvenience, physical harm, loss of property, and loss of employment opportunities.

**WHEREFORE**, the plaintiff claim judgment against the defendants as follows:

A.  Compensatory damages;

B.  Punitive damages;

C.  Attorney fees and the costs of this action pursuant to all applicable provisions of state and federal law;

D.  Equitable relief pursuant to 29 U.S.C.A.§§ 626(b) and (c), 633a(b) and (c) and all other applicable provisions of state and federal law;

E.  Such other relief as this Court shall consider to be fair and equitable.

## CLAIM FOR JURY TRIAL

The plaintiff claims trial by jury of all issues in this case.

22

THE PLAINTIFF


BY_____/s/_____
         WILLIAM S. PALMIERI
         Juris No. 409481
         Law Offices of William S. Palmieri, L.L.C.
         110 Whitney Avenue
         New Haven, CT 06510
         (203) 562-3100
         (203) 909-6006 (fax)
         wpalmieri@hotmail.com
         His Attorney