UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DESIREE JOHNSON,<br>      Plaintiff,<br><br>v.<br><br>STATE OF CONNECTICUT, et al.,<br>      Defendants. | No. 3:19-cv-01054 (SRU) |

**RULING ON DEFENDANTS' MOTIONS TO DISMISS**

      This action stems from Desiree Johnson's ("Johnson") employment with the Connecticut Judicial Branch ("the Judicial Branch") as a judicial marshal for the Judicial District of Windham. Johnson alleges that she was subjected to racial discrimination and sexual harassment throughout the duration of her employment.

      On July 3, 2019, Johnson filed a lawsuit against the State of Connecticut ("the State"), the Judicial Branch, Judicial Marshal Thomas Tercjak ("Tercjak"), and Chief Judicial Marshal Russell Downer ("Downer"). *See generally*, Compl., Doc. No. 1. Count One alleges a Title VII claim of racial discrimination, sexual harassment, disparate treatment, hostile work environment, and retaliation against the State and the Judicial Branch. *Id*. at ¶ 76. Count Two alleges a due process and equal protection claim pursuant to 42 U.S.C. § 1981 and 42 U.S.C. § 1983 against Tercjak and Downer in their individual capacities. *Id*. at ¶ 79. Count Three alleges a violation of Conn. Gen. Stat. § 46a-60, *et seq*., for discrimination, sexual harassment, hostile work environment, and retaliation against the State and the Judicial Branch. *Id*. at ¶ 76. Count Four alleges a claim of negligent supervision against the State and the Judicial Branch. *Id*. at ¶ 76. Count Five alleges a claim of intentional infliction of emotional distress ("IIED") against Tercjak and Downer. *Id*. at ¶ 79.

On November 13, 2019, the State and the Judicial Branch moved to dismiss Counts Three and Four. *See generally* State Mot. to Dismiss (Doc. No. 20). Later that day, Downer, in his individual and official capacities, and Tercjak in his official capacity only, moved to dismiss Counts Two and Five. *See generally* Downer and Tercjak Mot. to Dismiss (Doc. No. 23). On December 13, 2019, Tercjak, in his individual capacity, moved to dismiss Counts Two and Five. *See generally* Tercjak Mot. to Dismiss (Doc. No. 27).

On August 24, 2020, I held a motion hearing at which I granted the State's motion in its entirety and dismissed Count Five against Tercjak and Downer without prejudice.[1] *See* Minute Entry, Doc. No. 32. I took the motions to dismiss Count Two under advisement. *Id*.

For the reasons stated below, the motions to dismiss Counts Two (doc. nos. 23 and 27) are **denied**.

**I.      Standard of Review**

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) is designed "merely to assess the legal feasibility of a complaint, not to assay the weight of evidence which might be offered in support thereof." *Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir. 1984) (quoting *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980)).

When deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true, draw all reasonable inferences in favor of the

---

[1] Specifically, I dismissed the claims asserted against Tercjak and Downer in their official capacities and the IIED claim asserted against Tercjak and Downer in their individual capacities. I dismissed Johnson's Section 1981 claim because she failed to allege a contractual relationship between either Tercjak or Downer. I also dismissed Johnson's Section 1983 claim based on a violation of due process, retaliation, and discrimination. The following claims remain: Count One: a Title VII claim of racial discrimination, sexual harassment, disparate treatment, hostile work environment, and retaliation against the State and the Judicial Branch and Count Two: a hostile work environment claim brought under 42 U.S.C. § 1983 against Tercjak in his individual capacity and Downer as a supervisory employee.

2

plaintiff, and decide whether it is plausible that plaintiffs have a valid claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007); *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996).

Under *Twombly*, "[f]actual allegations must be enough to raise a right to relief above the speculative level," and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." 550 U.S. at 555, 570; *see also Iqbal*, 556 U.S. at 679 ("[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). The plausibility standard set forth in *Twombly* and *Iqbal* obligates the plaintiff to "provide the grounds of his entitlement to relief" through more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (quotation marks omitted). Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claims] is improbable, and . . . recovery is very remote and unlikely." *Id.* at 556 (quotation marks omitted).

"A statute of limitations defense is most often pleaded as an affirmative defense and requires a factual inquiry beyond the face of the complaint." *OBG Tech. Servs., Inc. v. Northrop Grumman Space & Mission Sys. Corp.*, 503 F. Supp. 2d 490, 503 (D. Conn. 2007). A defendant may, however, "raise the statute of limitations in a Rule 12(b)(6) motion '[w]here the dates in a complaint show that an action is barred by a statute of limitations.'" *Id*. (quoting *Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989)); *see also Samuel v. City of Hartford*, 154 Conn. App. 138, 142 (2014) (affirming the trial court's decision to dismiss on statute of limitations grounds where statute of limitations was not originally pleaded as affirmative defense).

3

**II.     Background**

Johnson began her career as a judicial marshal in December 2012.  *See* Compl. at ¶ 8.  On April 12, 2013, she was assigned to the Danielson Courthouse in the Windham Judicial District.  *Id*. at ¶ 10.  Before her arrival, Johnson was warned to "watch her back" because she would be the first African American female marshal to work in the courthouse.  *Id*. at ¶ 12.

Throughout her tenure at the Danielson Courthouse, Johnson alleges that she was subjected to racial discrimination and sexual harassment by other members of the Connecticut Judicial Marshal Services.  *Id*. at ¶ 11.  Johnson alleges that she was routinely and persistently harassed by Tercjak and Downer.  *Id*. at ¶¶ 28–28, 43.

A.  Tercjak's Alleged Conduct

Johnson alleges that Tercjak, who is white, constantly racially and sexually harassed her.  *Id*. at ¶ 14.  On or about June 6, 2014, Johnson alleges that Tercjak was having a conversation with another judicial marshal and began talking about the "bodies" of black "cars" in Johnson's presence.  *Id*. at ¶ 26.  Tercjak made it known to Johnson that he was referring to human bodies and stated that "black bodies show a lot of imperfections."  *Id*.  On one occasion, Tercjak allegedly told Johnson not to play rap music at the courthouse because it is "ghetto music."  *Id*. at ¶ 42.

On November 6, 2014, Johnson alleges that she was in the control room with Tercjak and another white marshal, who began to inquire about the sexuality of Johnson's six-year-old son.  *Id*. at ¶ 22.  The two white marshals allegedly told Johnson that she better make sure that her young son "doesn't turn gay and like it."  *Id*. at ¶ 24.  Johnson further alleges that Tercjak referred to her as his "sexual chocolate goddess," and stated that he "would like to eat strawberries dipped in chocolate off of [her] stomach."  *Id*. at ¶ 30.  In addition, Tercjak

allegedly asked Johnson if she was "tired" from being in his dreams the prior night and suggested that she could "stay the night" at his residence. *Id.* at ¶ 31–32.

On March 16, 2016, Tercjak allegedly told Johnson that her "tits look huge," and all he can see is "tits and a small waist" in Johnson's Employee Identification picture. *Id.* at ¶ 36. Two days later, Tercjak allegedly said that Johnson "could sit on his lap because there are no more seats in the Control Room." *Id.* at ¶ 37.

Tercjak repeatedly sent Johnson inappropriate or unwanted text massages. For example, on August 6, 2014, Tercjak texted Johnson at 8:19 p.m. to ask about what she was wearing. *Id.* at ¶ 34. Johnson also alleges that Tercjak sent her the following texts:

January 8, 2014:

>Tercjak: [Johnson] want that picture!!!@!!!!!!!!!
>
>Tercjak: Not for me. I ALWAYS get what I want.
>
>Tercjak: I'm an impatient son of a bitch.

January 23, 2014:

>Tercjak: Disappointed!!! :(
>
>Tercjak: I'm gonna keep asking until u give in.

August 15, 2014:

>Tercjak: (Photo of a model in a tight dress) I have narrowed it down to 2. This . . . (second photo of a model in a tight dress). And this.

April 26, 2016:

>Tercjak: What are you wearing?
>
>Tercjak: Mel [another female Marshal] would do it if I asked.
>
>Tercjak: I miss you on the weekends tho.

5

>Tercjak: Night DJ
>
>Tercjak: I'll miss you.

*Id*. at ¶ 35.

Johnson alleges that Tercjak would guess the color of her underwear and asked her if he needed to demonstrate a proper pat-down on her breasts. *Id*. at ¶ 40–41. During work hours, Tercjak would routinely demand that Johnson provide him "bikini photos" of herself and at one point told Johnson that he wanted to make her "Polish by injection." *Id*. at ¶ 57–58. One day, when another judicial marshal was spitting out chewing tobacco, Tercjak allegedly turn to Johnson and asked, "Do you spit?" *Id*. at ¶ 38.

On August 24, 2015, Johnson filed a complaint alleging harassment by Tercjak and other judicial marshals at the Danielson Courthouse. *Id*. at ¶ 55. The complaint was forwarded to the Judicial Branch in Hartford. *Id*. Johnson reports that after an investigation, state officials concluded that her claims were substantiated but no action was taken, and the harassment continued. *Id.*

On July 15, 2017, Johnson posted a picture on Instagram and under her picture Tercjak commented, "smoking." *Id*. at ¶ 60. During and after October 2017, Johnson alleges that Tercjak and others forwarded texts and photographs "attempting to falsely portray [her] in retaliation for her complaints." *Id*. at ¶ 67.

Johnson maintains that the harassment continued to 2018. For example, in February 2018, she alleges that "photographs were mailed to [her] new assignment in New London with captions written on them." *Id.* at ¶ 69. Johnson reports that Tercjak and Downer sent the photos "to retaliate against [her] and to further discriminate against her." *Id.*

B. <u>Downer's Alleged Conduct</u>

Downer was the Chief Judicial Marshal at the Danielson Courthouse during Johnson's assignment. *Id*. at ¶ 43. Johnson alleges that Downer, who is white, was aware of Tercjak's and others' conduct, but did nothing to stop it, and, in fact, joined in the harassment. *Id*.

She alleges that on November 28, 2014, the Judicial Branch expressly found that the "good old boy" culture in the Windham Judicial District, and the "lack of sound leadership" by Downer in violation of Judicial Branch policy had a "chilling effect" on Johnson's willingness to report discriminatory conduct. *Id*. at ¶¶ 61–63.

On January 5, 2015, Downer allegedly told Johnson that one day he and his wife had attended a baseball game where they saw two "big black guys." *Id*. at ¶ 46. It just so happened that a prison transport van drove by, and Downer told the two black men that they "missed [their] ride." *Id*. Johnson states that she was deeply offended and humiliated after hearing Downer's story. *Id*. at ¶ 47.

Upon arriving to work on January 15, 2015, Johnson alleges that Downer informed her that "as a result of her proximity to [a] prisoner transport [van], [Johnson's] license plate had been run." *Id*. at ¶ 50. Downer joked that law enforcement "must have thought you were a drug dealer from New London in your hood car and tinted windows." *Id*.

On June 6, 2017, Downer allegedly told Johnson that he would be stopping by Victoria's Secret, where Johnson worked a second job. *Id*. at ¶ 45. Downer texted Johnson, "Do not tell Tercjak where you are working :-)" and "You will give him a heart attack." *Id*. Johnson also alleges that in February 2018, Downer, along with Tercjak, mailed photos to her in retaliation of her complaints. *Id.* at ¶ 69.

### III. Discussion

#### A. Section 1983 Hostile Work Environment (Count Two)

Count Two alleges a Section 1983 equal protection claim pursuant to 42 U.S.C. § 1983 against Tercjak in his individual capacity and against Downer as a supervisory employee.

Section 1983 and the Equal Protection Clause protect public employees from various forms of discrimination, including hostile work environment. *See Demoret v. Zegarelli*, 451 F.3d 140, 149 (2d Cir. 2006). "Once action under color of state law is established, the analysis for such claims is similar to that used for employment discrimination claims brought under Title VII, the difference being that a § 1983 claim, unlike a Title VII claim, can be brought against individuals." *Id*. "In order to establish a claim of hostile work environment, a plaintiff must produce evidence that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Id*. (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). "[Johnson] must show not only that she subjectively perceived the environment to be abusive, but also that the environment was objectively hostile and abusive." *Id*. (citing *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 745 (2d Cir. 2003)). Isolated incidents typically do not rise to the level of a hostile work environment unless they are "of sufficient severity" to "alter the terms and conditions of employment as to create such an environment." *Patterson v. County of Oneida*, 375 F.3d 206, 227 (2d Cir. 2004). Generally, "incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) (internal quotations omitted).

"Individual liability under § 1983 in hostile work environment claims may also involve supervisory liability." *Raspardo v. Carlone*, 770 F.3d 97, 116 (2d Cir. 2014). "'[B]ecause

8

vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)). "To hold a supervisor liable under § 1983, a plaintiff must show (1) '[t]he personal involvement of [the] supervisory defendant'; (2) 'that the supervisor's actions were the proximate cause of the plaintiff's constitutional deprivation'; and (3) 'that a supervisor's behavior constituted intentional discrimination on the basis of a protected characteristic such as sex.'" *Rodriguez v. City of Danbury*, 2019 WL 4806032, at *19 (D. Conn. Sept. 30, 2019) (quoting *Raspardo*, 770 F.3d at 116). "In cases of sexual harassment, liability may be appropriate under § 1983 when a supervisor 'created an environment, or at least permitted one to exist, in which the alleged misconduct of various [employees] under his command flourished and produced the harm of which the plaintiff complained.'" *Id.* (quoting *Gierlinger v. New York State Police*, 15 F.3d 32, 33 (2d Cir. 1994)).

Tercjak and Downer move to dismiss Count Two, arguing that Johnson's claim is untimely under the applicable statute of limitations. In Connecticut, Section 1983 claims are governed by the three-year limitations period set forth in Conn. Gen. Stat. § 52-577.[2] *See Harnage v. Torres*, 665 F. App'x 82, 83 (2d Cir. 2016) ("Section 1983 actions arising in Connecticut, like this one, are governed by the three-year limitations period set forth in Conn. Gen. Stat. § 52-577."). For purposes of Section 1983, a claim of action accrues "when the plaintiff knows or has reason to know of the injury which is the basis of [her] action." *Id.* (citation omitted).

---

[2] "No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of." Conn. Gen. Stat. § 52-577

In her complaint, Johnson alleges that Tercjak harassed her as early as January 2014 and Downer as early as January 2015. *See, e.g.*, Compl. ¶¶ 35, 47–50. Johnson filed her lawsuit on July 3, 2019. Therefore, section 1983 claims based on conduct by Tercjak and Downer that occurred before July 3, 2016 are time-barred. Nonetheless, Johnson contends that the continuing course of conduct doctrine tolls the statute of limitations.

"A continuing course of conduct may toll the statute of limitations on a plaintiff's . . . § 1983 claims, where the alleged violation is composed of a series of separate acts that collectively constitute one unlawful employment practice." *Hardy v. Town of Greenwich*, 2008 WL 5117370, at *10 (D. Conn. Dec. 3, 2008) (quotations omitted). "[I]n order to avail [herself] of the doctrine, [Johnson] must show that the alleged violation was 'continuous' and not simply a series of isolated, unrelated acts. In other words, if the acts of harassment alleged 'are sufficiently isolated in time,' either 'from each other' or 'from the timely allegations,' it may 'break the asserted continuum of discrimination.'" *Id.* (quoting *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 769 (2d Cir. 1998), *abrogated in part on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002)). For the continuing course of conduct doctrine to apply, Johnson must allege that at least one act during the filing period contributed to her hostile work claim.

> It does not matter . . . that some of the component acts of the hostile work environment fall outside the statutory time period. Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.

*Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002).

1. *Tercjak*

The majority of Tercjak's alleged conduct occurred before Johnson's transfer to New London June 23, 2016. *See* Compl. at ¶ 59. For example, Tercjak's inappropriate and unwanted

10

texts to Johnson occurred throughout her tenure at the Danielson Courthouse with the last message sent on April 26, 2016.  *Id*. at ¶ 35.  His comments about Johnson's appearance in her employee identification picture and his statement that Johnson could "sit on his lap" in the control room occurred in March 2016.  *Id*. at ¶¶ 36–37.  Tercjak's statements regarding Johnson's underwear were made on May 3, 2016 and his demands for pictures of her in a bikini "occurred routinely until June 23, 2016, when [Johnson] finally received her transfer to New London."  *Id*. at ¶¶ 40, 58–59.

The allegations involving Tercjak that occurred within the statute of limitations period (July 3, 2016 to July 3, 2019) include the following:

> On or about July 15, 2017, Johnson posted a picture on Instagram and under her picture and Tercjak commented, "smoking."  *Id.* at ¶ 60.

> During and after October 2017, Tercjak and others forwarding texts and photographs to other judicial marshals "attempting to falsely [Johnson] in retaliation for her complaints and as further discrimination and harassment."  *Id.* at ¶ 67.

> In February 2018, Tercjak mailed photographs "with captions written on them" to Johnson's new assignment in New London "to retaliate against [Johnson] and to further discriminate against her."  *Id.* at ¶ 69.

2.  *Downer*

Similarly, the bulk of Downer's conduct occurred before Johnson was transferred to New London.  Downer recounted his story about telling two "big black guys" that they "missed their ride" on a prison transport van on January 5, 2015.  *Id*. at ¶ 46.  The incident involving Johnson and her "tinted windows" occurred on January 15, 2015.  *Id*. at ¶ 50.

Downer's conduct within the filing period includes:

> On or about June 6, 2017, Downer texted Johnson that he would be stopping by her second job at Victoria's Secret.  He texted, "Do not tell Tercjak where you are working :)" and "You will give him a heart attack."  *Id*. at ¶ 45

11

> In February 2018, Downer mailed photographs "with captions written on them" to Johnson's new assignment in New London in retaliation and to further discriminate against her. *Id.* at ¶ 69.

Drawing all reasonable inferences in Johnson's favor, I conclude that at least two acts occurred within the filing period that contribute to her hostile work environment claim. Tercjak's July 15, 2017 Instagram comment that Johnson was "smoking" supports Johnson's claim that she was subjected to a hostile work environment on the basis of gender. Although Tercjak's Instagram comment alone does not establish a hostile work environment claim, "facially sex-neutral [conduct] may sometimes be used to establish a course of sex-based discrimination" when analyzed among the "totality of the circumstances" surrounding a hostile work environment claim. *Lehman v. Bergmann Assocs., Inc.*, 11 F. Supp. 3d 408, 419 (W.D.N.Y. 2014) (quoting *Costello* at 294 F.3d at 374). Tercjak's Instagram comment allegedly occurred within months of his repeated demands for pictures of Johnson in her bikini and statements regarding the color of her underwear. *See* Compl. ¶¶ 40, 58–59.

Likewise, Downer's June 6, 2017 texts to Johnson that he would be stopping by Victoria Secret to visit her supports Johnson's hostile work environment and her allegation that he was "aware of" and "joined in" the harassment. *Id.* at ¶¶ 43, 45. Because Johnson alleges that Tercjak and Downer each engaged in at least one act contributing to her hostile work environment claim within the filing period, I may consider the time-barred allegations involving each defendant. *See Dragon v. Connecticut*, 2015 WL 3905285, at *7 (D. Conn. June 25, 2015) (quoting *Morgan*, 536 U.S.at 117) ("I may consider Ms. Dragon's time-barred allegations for purposes of her hostile work environment claim. '[I]t does not matter . . . that some of the component acts of the hostile work environment fall outside the statutory time period . . . .

[p]rovided that an act contributing to the claim occurs within the filing period.'") (internal citations omitted).

After reviewing the complaint, I conclude that Johnson's allegations permit an inference that her workplace was "permeated with discriminatory intimidation, ridicule, and insult" to alter the conditions of her employment. *Demoret*, 451 F.3d at 149. The allegations that Tercjak called Johnson his "sexual chocolate goddess," and that he "would like to eat strawberries dipped in chocolate off of [her] stomach," combined with his repeated demands for "bikini" photos establish an objectively hostile and abusive work environment based on Johnson's gender and race. Johnson has also satisfied the subjective prong of a hostile work environment claim, alleging that she was deeply offended, humiliated, and embarrassed by Tercjak and Downer's conduct. *See* Compl. at ¶¶ 38, 47. Therefore, she has asserted a plausible hostile work environment claim against Tercjak, in his individual capacity, and Downer, as a supervisory employee.

Accordingly, the motions to dismiss Count Two are **denied**.

## IV. Conclusion

For the reasons stated above, I **deny** the pending motions to dismiss (doc. nos. 23 and 27).

So ordered.

Dated at Bridgeport, Connecticut, this 18th day of September 2020.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge